**E-FILED**
Friday, 25 October, 2013  11:50:02 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| DON NORTON and KAREN OTTERSON, Individually and on behalf of others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | NO. 13-3316 |
| v. | ) ) | |
| CITY OF SPRINGFIELD, Springfield Police Officers Scott Ligon, Kathy Martin, Darrin Divjak, Joe Phillips, Sergeant Jeff Barr and unknown Springfield Police officers, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## OPINION

RICHARD MILLS, U.S. District Judge:

Plaintiffs seek a Preliminary Injunction enjoining the enforcement of part of a City of Springfield, Illinois, Ordinance.

Plaintiffs have not demonstrated at this stage that the City's Ordinance banning panhandling in the historic downtown area is invalid and unconstitutional.

Motion for Preliminary Injunction is Denied.

# I. INTRODUCTION

Section 131.06(e) of the Springfield Municipal Code provides, "It shall be unlawful to engage in an act of panhandling in the downtown historic district."  The Plaintiffs seek the entry of a preliminary injunction barring Defendant City of Springfield ("the City" or "Springfield") from enforcing § 131.06(e) of the Springfield Municipal Code, contending it is unconstitutional on its face for two different reasons: (1) it is a content-based restriction because it prohibits vocal appeals and requests for "immediate donation[s]" in Springfield's downtown historic district while allowing vocal appeals and requests for all other lawful purposes; and (2) it imposes an unreasonable time, place and manner restriction by absolutely prohibiting "vocal requests" and "vocal appeals" for immediate donations in the City's downtown historic district.

# II. FACTUAL BACKGROUND

In support of the motion, the Plaintiffs allege they are individuals who peacefully panhandle on the public sidewalks of the City, including in the downtown historic district, in order to help support themselves.

2

### A. Don Norton

Don Norton is a 52-year old resident of Springfield, Illinois, who regularly panhandles on the City's public sidewalks in order to have money for housing, food and other essentials.  Although Norton is currently unemployed, he routinely seeks odd jobs including mowing lawns and painting houses, in order to earn money.  Norton receives no public aid.

Norton typically panhandles in downtown Springfield at Sixth and Lawrence Street, as well as other locations in the downtown area and throughout the City.  He panhandles on the public sidewalk and never on the street.  Norton usually panhandles three days per week between the hours of noon and 9:00 p.m., averaging between $5.00 – $25.00 per day.

When panhandling, Norton often carries a sign that reads, "Thank you very much, and God Bless you."  He does not speak to passersby because it is illegal.  However, he would like to be able to do so.  Norton thanks those people who contribute money or food.

Norton prefers to panhandle in Springfield's downtown historic district because that is where the pedestrian traffic in the City is busiest and

is therefore the area where he is most likely to obtain assistance.

B. Karen Otterson

Karen Otterson is a 48-year old resident of Springfield.  Otterson regularly panhandles on the public sidewalks of Springfield in order to have money for housing, food and other essentials.  Otterson is unemployed, has been diagnosed with a mental disability and receives Social Security Disability payments of $736.00 per month.

Otterson typically panhandles in downtown Springfield, as well as other locations throughout the City.  She panhandles on the public sidewalk and never panhandles in the street.  On average, Otterson panhandles five days a week between the hours of 7:00 a.m. and 9:00 p.m., generally earning between $5.00 – $75.00 per day.

When panhandling, Otterson often carries a sign that reads, "Please help panhandlers.  God bless you.  God bless your heart."  She does not speak to passersby because it is illegal, though she would like to do so. Otterson only speaks to thank those who contribute money or food.  Like Norton, Otterson prefers to panhandle in Springfield's downtown historic

district because that is where the pedestrian traffic in the City is busiest.

C. Section 131.06 of the Springfield Municipal Code

Section 131.06(a)(1) defines panhandling as "Any solicitation made in person . . . in which a person requests an immediate donation of money or other gratuity." Section 131.06(b) explicitly exempts from the definition of panhandling the passive display of a sign requesting donations without making a "vocal request":

> However, panhandling shall not include the act of passively standing or sitting or performing music, signing or other street performance with a sign or other indication that a donation is being sought, without any vocal request other than in response to an inquiry by another person.

Additionally, § 131.06(e) bans panhandling in the City's "downtown historic district." The "downtown historic district" is defined in § 131.06(3) as follows:

> Downtown historic district: Public property within the area bounded on the south by Lawrence, on the east by 10th, on the north by Carpenter, and on the west by the Third Street railroad tracks from Carpenter south to Adams, then west on Adams to a line 100 feet west of Pasfield, then south to Edwards, then east on Edwards to the Third Street railroad tracks, south to Lawrence.

# III. DISCUSSION

## A. Preliminary injunction standard

To obtain a preliminary injunction, a movant must show that it has (1) no adequate remedy at law and will suffer irreparable harm without injunctive relief; and (2) some likelihood of success on the merits. *See American Civil Liberties Union v. Alvarez*, 679 F.3d 583, 589 (7th Cir. 2012). "If the moving party makes this threshold showing, the court weighs the factors against one another, assessing whether the balance of harms favors the moving party or whether the harm to the nonmoving party or the public is sufficiently weighty that the injunction should be denied." *Id*. (internal quotation marks omitted).

Because they assert each element is in their favor, the Plaintiffs ask the Court to preliminarily enjoin the City from enforcing § 131.06(e)'s ban on "vocal appeals" and "vocal requests" for "immediate donation[s]" in the downtown historic district against the Plaintiffs and others similarly situated.

Although the City contends courts are more willing to enter

preliminary injunctions to preserve the status quo than to alter the status quo, "[t]he Supreme Court has long since foreclosed th[e] argument" that pre-enforcement preliminary injunctions are inappropriate. *See Alvarez*, 679 F.3d at 590 n.1 (citations omitted). If the Plaintiffs are able to meet each element, therefore, they will be entitled to injunctive relief.

B. First Amendment principles

The United States Supreme Court has observed that "charitable appeals for funds, on the street or door to door, involve a variety of speech interests–communication of information, the dissemination and propagation of views and ideas, and the advocacy of causes–that are within the protection of the First Amendment." *Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 632 (1980). Citing *Schaumburg*, the United States Court of Appeals for the Seventh Circuit has observed:

> Beggars at times may communicate important political or social messages in their appeals for money, explaining their conditions related to veteran status, homelessness, unemployment and disability, to name a few. Like the organized charities, their messages cannot always be easily separated from their need for money. While some communities might wish all solicitors, beggars and advocates of various causes be vanished from the streets, the First Amendment guarantees their right to be there,

7

deliver their pitch and ask for support.

*Gresham v. Peterson*, 225 F.3d 899, 904 (7th Cir. 2000) (internal citations omitted). Accordingly, panhandling falls within the ambit of the First Amendment.

The question then is whether the Springfield Ordinance is consistent with the First Amendment. Courts have observed that traditional public fora such as public streets and sidewalks have a "special position in terms of First Amendment protection." *Snyder v. Phelps*, 131 S. Ct. 1207, 1218 (2011) (quoting *United States v. Grace*, 461 U.S. 171, 180 (1983)). In this case, the ban on "vocal appeals" in the downtown historic district would certainly apply to traditional public fora such as sidewalks and parks. Governments may enact "reasonable regulations" on the right to solicit money in public places, as long the regulations have "due regard" for the constitutional interests at stake. *See Gresham*, 225 F.3d at 905 (quoting *Schaumburg*, 444 U.S. at 632).

In *Gresham*, the United States Court of Appeals for the Seventh Circuit upheld the constitutionality of an ordinance from Indianapolis,

Indiana.  *See Gresham*, 225 F.3d at 908-09.  The ordinance at issue in that case was similar to the one now before the Court and the Defendants state that the Springfield Ordinance was based on the Indianapolis ordinance upheld by the Seventh Circuit.

However, there are some differences between the ordinances.  Unlike the Indianapolis ordinance, § 131.06(e) of the Springfield Ordinance prohibits the act of panhandling in the downtown historic district, the geographical limits of which are listed in § 131.06(3).  The Indianapolis ordinance does not have a similar geographic restriction.

Municipalities may impose reasonable content-neutral time, place and manner restrictions on speech.  *See Teesdale v. City of Chicago*, 690 F.3d 829, 834 (7th Cir. 2012).  An example of such a restriction would be "prohibiting someone from using a bullhorn during a public festival."  *Id*. at 834-35.

However, content-based restrictions are presumptively invalid.  *See Alvarez*, 679 F.3d at 603.  The parties dispute whether the Springfield Ordinance is a content-based restriction.

9

## C. Content-based vs. content-neutral restrictions

### (1)

The Plaintiffs contend that because the Springfield Ordinance prohibits all vocal appeals and vocal requests for "immediate donation[s]" and does not similarly ban vocal requests or appeals for any other type of immediate action, it is content-based on its face. The Ordinance does not preclude vocal requests or appeals for political causes and/or campaigns (*e.g.*, immediate requests for people's names, addresses and signatures); commercial interests (*e.g.*, selling a book or newspaper, immediate requests to sign up people for business memberships, mailing lists or time-sensitive store sales); and/or religious campaigns (*e.g.*, evangelical and proselytizing efforts).

Relying on *Gresham*, the Defendants contend the Springfield Ordinance is a content neutral "time, place and manner" restriction.

The Seventh Circuit observed there are "[c]olorable arguments" regarding whether or not the Indianapolis ordinance is a content-neutral time, place or manner restriction. *See Gresham*, 225 F.3d at 905. "The

10

Supreme Court has held that government regulation of expressive activity is content neutral so long as it is *justified* without reference to the content of the regulated speech." *Id*. (emphasis in original, internal quotation marks and citations omitted).

To apply that standard, the court in *Gresham* noted the Supreme Court has instructed that "the principal inquiry is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Id*. (internal quotation marks and citation omitted). The court further observed:

> [H]ere, whether a solicitor violates the ordinance depends on whether he asked for cash rather than for something else. On one side of the argument, the city ordinance does not prohibit all solicitation on city streets, only solicitations for immediate cash donations. One could, for instance, ask passers-by for their signatures, time, labor or anything else, other than money. Only by determining the specific content of a solicitor's speech could authorities determine whether they violated the ordinance, which would seem to be a content-based restriction.

*Id*. (citations omitted). However, "the inquiry into content neutrality in the context of time, place or manner restrictions turns on the government's justification for the regulation." *Id*. at 905-06.

11

Because the parties in *Gresham* agreed the regulations were content neutral, the court concluded it did not need to decide "whether the Indianapolis ordinance can be justified without reference to the content of the regulated speech." *Id*. at 906.

(2)

As noted, the parties here dispute whether the Springfield Ordinance is content-neutral.  In considering the Plaintiffs' motion, therefore, the Court must attempt to determine the City's justification.

The Plaintiffs contend the City's only purpose in enacting the Ordinance is to keep panhandling out of Springfield's central tourist and business area.  In support of that assertion, the Plaintiffs cite the statements of two City council members who were quoted in an Illinois Times article when the Ordinance was under consideration.  *See* Amanda Robert, *No-beg zone: Council considers anti-panhandling ordinance that affects only downtown*, *Illinois Times*, Aug. 1, 2007, available at: www.illinoistimes.com/Springfield/article-4291-no-beg-zone.html   (last retrieved October 22, 2013).

12

The Plaintiffs point to a statement from the Ordinance's sponsor who is quoted in the Illinois Times article as saying, "Some people are bothered by it–Downtown Springfield Inc. with all of its business members, they are the experts on what's going on downtown, and they believe it's not good for the downtown community."   The Illinois Times article also another alderman as follows, "I've been hit up enough that I'm sick of it." According to the article, some council members appeared to express support for a ban that affected the entire City--or at least a portion larger than the historic district–because panhandlers might move to other areas or neighborhoods to solicit residents on their sidewalks.

The City notes that the Ordinance was not passed at the committee meeting referenced in the article.  Moreover, two aldermen cannot speak conclusively for the City's intent.  The City further emphasizes that the Ordinance applies equally to street solicitors for charity and for those seeking personal donations.  Accordingly, it contends the quotes offered by the Plaintiffs do not purport to distinguish between those individuals.

In *Hill v. Colorado*, 530 U.S. 703 (2000), the United States Supreme

13

Court considered a Colorado statute which regulated speech-related conduct within 100 feet of a health care facility's entrance to "knowingly approach" within eight feet of another person, without that person's consent in order to pass out a "leaflet or handbill to, displa[y] a sign to, or engag[e] in oral protest, education, or counseling with [that] person." *Id*. at 707. The Supreme Court determined that the statute was content-neutral for a number of reasons, explaining:

> First, it is not a regulation of speech. Rather, it is a regulation of the places where some speech may occur. Second, it was not adopted because of disagreement with the message it conveys. This conclusion is supported not just by the Colorado courts' interpretation of legislative history, but more importantly by the State Supreme Court's unequivocal holding that the statute's restrictions apply equally to all demonstrators, regardless of viewpoint, and the statutory language makes no reference to the content of the speech. Third, the State's interests in protecting access and privacy, and providing the police with clear guidelines, are unrelated to the content of the demonstrators' speech. As we have repeatedly explained, government regulation of expressive activity is content neutral if it is justified without reference to the content of the speech.

*Id*. at 719-20. In *Turner Broadcasting System, Inc. v. F.C.C.*, 512 U.S. 622 (1994), the Supreme Court observed that rules that distinguish "based only upon the manner in which speakers transmit their messages to viewers, and

14

not upon the messages they carry" are content-neutral.  *Id*. at 645.

In *United States v. Kokinda*, 497 U.S. 720 (1990), the Supreme Court upheld as content-neutral and valid a regulation prohibiting the soliciting of alms and contributions at a post office, including on the sidewalk close to the post office's entrance.  *See id.* at 735-36 (plurality opinion).  The Court observed "it is not unreasonable to prohibit solicitation on the ground that it is unquestionably a particular form of speech that is disruptive of business." *Id*. at 733.  The Court noted that the post office's decision was based on the "inherent nature of solicitation itself, a content-neutral ground," in concluding that solicitation disrupted business.  *Id*. at 736.

In *Henry v. City of Cincinnati, Ohio*, No. C-1-03-509, 2005 WL 1198814 (S.D. Ohio Apr. 28, 2005), a district court considered whether a city ordinance which restricted the time, place and manner on the vocal solicitation of funds was content-neutral or content-based.  *See id*. at *1, 8. The court observed that the ordinance appeared to apply not only to the plaintiffs, who were homeless residents who relied on panhandling to obtain

funds for necessities, but also to individuals soliciting funds for any reason–
for example, on behalf of charities, religious groups, or political candidates
or organizations.  *See id*. at *1, 5.  Accordingly, the ordinance at issue in
*Henry* was similar in that respect to the Springfield Ordinance.

The court in *Henry* reasoned that the Cincinnati ordinance did not
impose an absolute ban on solicitation.  *See id*. at *8.  Rather, it "restricts
the time, place and manner of vocal solicitation."  *Id*.  Moreover, the
ordinance is not directed at the "message implicitly or expressly
communicated by a solicitor's request for money."  *Id*.  Like the Springfield
Ordinance, "[i]t restricts all vocal solicitation requests at certain times and
places regardless of whether the message being communicated is intended,
for instance, to support a charitable organization, to raise consciousness
about the plight of homeless veterans, or to convey one person's tale of
woe."  *Id*.  Relying on *Hill*, the court in *Henry* concluded that the ordinance
did not restrict speech because it disagreed with the message expressed.  *See
id*.

"The principal inquiry in determining content neutrality, in speech

16

cases generally and in time, place, or manner cases in particular, is whether

the government has adopted a regulation of speech because of disagreement

with the message it conveys." *Ward v. Rock against Racism*, 491 U.S. 781,

791 (1989).

Based on the current record, the Court is unable to conclude the City

adopted the regulation of speech because of disagreement with the message

it conveys.  The Ordinance does not prohibit vocal appeals for immediate

donations throughout most of Springfield, which would appear to cast

doubt on the assertion that it was adopted due to a disagreement with the

type of speech.

The Plaintiffs may be correct that the reason for the City's action is

to keep a particular type of panhandling out of Springfield's central tourist

and business area.  The Illinois Times article references the complaints of

downtown business owners about an increase in panhandling and a tour

guide's observation of more aggressive panhandling.  There is no mention

of any problems with individuals soliciting for charities.  Thus, it might be

reasonable to infer that the City's purpose was to regulate the speech of

17

individuals who panhandle.  However, the Court is unable to make that determination based on a newspaper's account of the statements of only two council members which were made before the Ordinance was enacted.

Even assuming that the reason the City enacted the Ordinance was to keep vocal appeals for immediate donations out of Springfield's tourist and business area, the Court concludes the regulation is content-neutral.  *See Kokinda*, 497 U.S. at 736 (holding that a ban on solicitation of money is content-neutral, based on the "inherent nature of solicitation itself").

Under the Springfield Ordinance, an individual is permitted to carry a sign requesting donations, as the Plaintiffs here regularly do.  Thus, the Ordinance simply regulates the manner in which the message is transmitted, which is content-neutral.  *See Turner Broadcasting*, 512 U.S. at 645.

Like the district court determined in *Henry*, *see* 2005 WL 1198814, at *9, even if the Plaintiffs' allegations as to purpose are taken as true, the Ordinance is justified without reference to the content of the regulated speech.  Following the same reasoning, the Court concludes that the

18

Springfield Ordinance is content-neutral.  *See id.* (citing *Hill*, 530 U.S. at 720; *Kokinda*, 497 U.S. at 736-37).

### D. Narrowly Tailored to a Significant Government Purpose

Having determined that the Ordinance is content-neutral, the Court must consider whether the restrictions are "narrowly tailored to serve a significant government interest" and "leave open ample alternative channels for communication of the information."  *See Ward*, 491 U.S. at 791; *see also Gresham*, 225 F.3d at 906.

(1)

The Plaintiffs contend that a blanket ban on panhandling speech activity in whole sections of downtown areas is not narrowly tailored to serve a significant government interest.  In discussing the Indianapolis Ordinance, the court in *Gresham* stated:

> The city determined that vocal requests for money create a threatening environment or at least a nuisance for some citizens.  Rather than ban all panhandling, however, the city chose to restrict it only in those circumstances where it is considered especially unwanted or bothersome–at night, around banks and sidewalk cafes, and so forth.  These represent situations in which people most likely would feel a heightened sense of fear or alarm, or might wish especially to be left alone.

19

> By limiting the ordinance's restrictions to only those certain times and places where citizens naturally would feel most insecure in their surroundings, the city has effectively narrowed the application of the law to what is necessary to promote its legitimate interest.

*Id*. at 906.  The Court has already noted that there is little evidence in the record of the City's intent in enacting the Ordinance.  Certainly, it might be reasonable to infer that Springfield was motivated by many of the same interests as Indianapolis.  In its Response to the Plaintiffs' Motion, the City claims the Ordinance was based on the Indianapolis Ordinance that was approved by the Seventh Circuit.[1]

The restriction in *Gresham* was upheld because "panhandlers may ply their craft vocally or in any manner they deem fit during all the daylight hours on all of the city's public streets."  *See id*. at 907.  Because Springfield's absolute ban applies 24 hours a day and seven days a week in the historic district, the Plaintiffs contend it cannot be considered narrowly

---

[1]According to the *Illinois Times* article however, Victoria Clemons, the executive director of Downtown Springfield, Inc., stated that the Ordinance was modeled after an Orlando, Florida law, which prohibits panhandling only in the commercial district.  *See* Amanda Robert, *No-beg zone: Council considers anti-panhandling ordinance that affects only downtown*, Aug. 1, 2007.

tailored.

Except for those portions of streets which make up the downtown historic district, the Springfield Ordinance allows panhandlers to appeal for donations vocally or in any other manner during daylight hours on the City's public streets. The streets which make up the downtown historic district represent a relatively small percentage of the City which, according to the 2010 census has a total area of 65.76 square miles, of which 59.48 square miles is land. *See* http://en.wikipedia.org/wiki/Springfield,_Illinois.

The Plaintiffs further assert that the absolute ban on "vocal appeals" and "vocal requests" for immediate donations does not leave open ample alternative channels for communication of the restricted information and does not serve a significant Government interest. The restriction on "vocal requests" is not targeted at safety issues nor does it enhance the orderly flow of traffic. Such concerns can be addressed by existing laws, including § 131.06(d)(2)'s ban on aggressive panhandling. The Plaintiffs allege the restriction serves instead as an undue burden on individuals who are seeking to express themselves.

21

The plaintiffs in *Gresham* similarly argued that although a city does have an interest in promoting the safety and convenience of its citizens, the restriction at issue was broader than necessary.  *See Gresham*, 225 F.3d at 906.  However, the court determined that in order to be considered narrowly tailored, a regulation did not have to be a perfect fit for the government's needs as long as it did not "burden substantially more speech than necessary."  *Id*.  Although it might appear that many of the city's concerns in *Gresham* would be addressed by the prohibition on aggressive panhandling, the court concluded that "[b]y limiting the ordinance's restrictions to only those certain times and places where citizens naturally would feel most insecure in their surroundings, the city has effectively narrowed the application of the law to what is necessary to promote its legitimate interest."  *Id*.

The Court has stated that determining the City's interest in this case requires some degree of speculation.  Assuming that Springfield has similar interests as Indianapolis in enacting the Ordinance, the Court has no basis to conclude that the restrictions are not "narrowly tailored to serve a

22

significant government interest."

An adequate alternative channel of communication need not be the speaker's first or best choice. *See Gresham*, 225 F.3d at 906. The alternative channel need not necessarily provide the same audience or impact for the speech. *See id*. Because the alternative means cannot be cost prohibitive, it "must be more than theoretically available. It must be realistic as well." *Id*. Additionally, an adequate alternative cannot totally restrict a speaker's ability to reach one audience even if it permits the speaker to reach others. *See id*. at 906-07.

The Seventh Circuit noted that pursuant to the Indianapolis ordinance, there were many viable alternatives to reach both the daytime and nighttime crowds in the city. *See id*. at 907. The court stated there were many reasonable ways for the plaintiff in *Gresham* to reach the downtown crowd at night. *See id*. He may solicit at night, as long as he does not vocally request money. *See id*. Moreover, the plaintiff may carry signs requesting donations or engage in street performances, for example playing music, while implicitly requesting money. *See id*. While

recognizing that it might not be relevant to individuals who panhandle on the streets, the Seventh Circuit found it worth noting that the ordinance allowed telephone and door-to-door solicitation at night. *See id*. Therefore, "solicitors may express themselves vocally all day, and in writing, by telephone or by other non-vocal means all night." *See id*. The court observed that the Indianapolis Ordinance permitted solicitation throughout the 396.4 square miles of the city, except:

> those parts occupied by sidewalk cafes, banks, ATMs and bus stops. This is a far cry from the total citywide ban on panhandling overturned by the Court in *Loper* [*v. New York City Police Dept.*], 999 F.2d at 705 [2d Cir. 2003]. ("[A] statute that totally prohibits begging in all public places cannot be considered 'narrowly tailored.'"), or the total ban on panhandling in a five-mile area of public beach upheld by the court in *Smith* [*v. City of Fort Lauderdale*], 177 F.3d at 956 [11th Cir. 1999].

*Id*. at 907. Of course, the Springfield Ordinance bans vocal solicitation in those same areas ("sidewalk cafes, banks, ATMs and bus stops") and further adds the "downtown historic district," which the City alleges constitutes approximately one square mile, or less.

The Court is not persuaded by the Plaintiffs' argument that the

24

restriction on "vocal requests" or "vocal appeals" fails to leave open sufficient alternative channels for communication of the restricted information.  A panhandler in Springfield may solicit in the downtown historic district, as long as he does not vocally request money.  He may carry signs or play music or otherwise perform, while implicitly requesting donations.  Although this might not be the individual's first or best choice as a means of communication, the Court is not aware of any reason why he or she cannot reach the same audience as a panhandler who makes vocal requests for money.  Moreover, this means of expression would seem to be realistically available to panhandlers.  Accordingly, it appears to be consistent with the First Amendment as interpreted by the Seventh Circuit. *See Gresham*, 225 F.3d at 906-07.

(2)

The Plaintiffs further assert the large geographic scope of the ban on "vocal appeals" and "vocal requests" is inconsistent with the City's contention that the Ordinance is narrowly tailored.  As defined in the Ordinance, the "downtown historic district" encompasses an approximately

25

nine-by-thirteen block radius, which includes the major commercial and tourist attractions and restaurants in the City. Moreover, the "downtown historic district" includes a larger area in terms of square blocks than the "entire business district," as defined by the Springfield Municipal Code.[2] The City contends that the prohibition on solicitation in the downtown historic district applies only to what amounts to about one square mile.

In contending that the downtown historic district is not an impermissibly large geographic restriction, the City points to *Smith v. City of Fort Lauderdale*, 177 F.3d 954 (1999), wherein the Eleventh Circuit considered a regulation that prohibited panhandling on a five-mile strip of beach and on two nearby sidewalks. *See id*. at 955. The parties stipulated to the importance of tourism in the Fort Lauderdale Beach area and the desire to attract new investment and quality development. *See id*. at 955-56. The court observed that the regulations restricting panhandling in the beach area and nearby sidewalks served to restrict speech in a public forum.

---

[2]Section 155.001 defines the downtown district as "[a]n area bounded by Carpenter Street on the north; Cook Street on the south; 11th Street on the east and 1st Street on the west."

26

*See id*. at 956.

The Eleventh Circuit concluded that the restrictions on panhandling in "the Fort Lauderdale Beach area are narrowly tailored to serve the City's interest in providing a safe, pleasant environment and eliminating nuisance activity on the beach." *Id*. at 956.  Because it declined to second-guess the city's determination regarding the adverse effects that begging had on tourism, the court was unable to conclude that the regulation prohibiting panhandling in the limited beach area burdened "substantially more speech than is necessary to further the government's legitimate interest." *Id*.  The court noted that begging was permitted in many other public fora throughout Fort Lauderdale.  *See id*. at 956-57.  Accordingly, the Eleventh Circuit concluded the plaintiffs did not demonstrate that the restrictions on panhandling in the beach area were "substantially broader than necessary." *See id*. at 957.

The Plaintiffs contend that the City's reliance on *Smith* is misplaced. They allege that a beach is different from a public sidewalk, which is a "traditional public forum" where "government restrictions on

communicative activities are strictly circumscribed."  The Plaintiffs point out that the court in *Smith* specifically stated that the restriction on panhandling in the "Fort Lauderdale Beach area is materially mitigated by the allowance of begging in streets, on sidewalks, and in many other public fora throughout the City."  177 F.3d at 956-57.

However, the regulation at issue in *Smith* did not only prohibit panhandling on a 5-mile stretch of beach.  The prohibition extended to a "one-and-a-half mile promenade sidewalk between th[e] beach and Highway A1A, and the commercial-area sidewalk on the opposite side of Highway A1A."  *Id*. at 955.  Like the sidewalks in Springfield's historic district, the sidewalks in the Fort Lauderdale Beach area were part of the primary tourist location in the area.  *See id*.  Therefore, the geographic scope of the prohibition on panhandling in *Smith* is at least somewhat analogous to the Ordinance in this case.[3]

---

[3]The Plaintiffs also point to *A.C.L.U. of Nevada v. City of Las Vegas*, 466 F.3d 784 (9th Cir. 2006), wherein the Ninth Circuit determined that an ordinance prohibiting panhandling on a five-block stretch of public sidewalks was unconstitutional.  *See id*. at 800.  Because that holding was premised on the court's determination that the ordinance was content-based, the Court concludes that case is inapposite.

28

Although there is little evidence in the record regarding the City's reasons in enacting the Ordinance, the Plaintiffs have not demonstrated that the Ordinance is "substantially broader than necessary."  The Court has no basis to conclude that the restrictions are not "narrowly tailored to serve a significant government interest."

## IV. CONCLUSION

Upon considering the information in the record, the Court concludes that Plaintiffs have not met their burden in showing that they are entitled to a preliminary injunction.  The Plaintiffs have neither established that they will suffer irreparable harm without an injunction or a likelihood of success on the merits.  There is very little evidence in the record regarding the City's reasoning for adopting the Ordinance.

Accordingly, the Court declines to preliminarily enjoin the City from enforcing § 131.06(e)'s ban on "vocal appeals" and "vocal requests" for "immediate donation[s]" in the downtown historic district against the Plaintiffs and other who are similarly situated.

For purposes of this Motion, the Court concludes that the Ordinance

29

appears to be "narrowly tailored to serve a significant government interest" and it "leaves open ample alternative channels for communication of the information."

Ergo, the Plaintiffs' Motion for a Preliminary Injunction [d/e 4] is DENIED.

Following the Defendants' filing of an Answer to the Complaint, this case shall be referred to United States Magistrate Judge Byron G. Cudmore for the purpose of setting a discovery conference.

ENTER: October 25, 2013

FOR THE COURT:

*s/Richard Mills*
Richard Mills
United States District Judge

30