## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| DON NORTON and KAREN OTTERSON,<br>Individually and on behalf of others<br>similarly situated, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | NO. 13-3316 |
| | ) | |
| CITY OF SPRINGFIELD, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>OPINION</u>

RICHARD MILLS, U.S. District Judge:

This case is about the First Amendment and attorney's fees.

Let us start at the beginning.

## I. INTRODUCTION

The Plaintiffs–Don Norton and Karen Otterson–challenged the constitutionality of § 131.06(e) of the City of Springfield Municipal Code, an ordinance that made it "unlawful to engage in an act of panhandling in the downtown historic district" of Springfield. The Plaintiffs asserted the ordinance was a content-based regulation of speech in violation of their First Amendment rights.

The primary constitutional issue concerned the standard for determining whether a particular regulation is properly treated as "content-based" or "content-

neutral" under the First Amendment. The Defendant, City of Springfield, defended the constitutionality of the ordinance, eventually seeking review in the United States Supreme Court. After nearly four years of litigation, the Plaintiffs obtained all of the relief they sought: (1) a determination by the Seventh Circuit that the challenged ordinance is a content-based regulation that violates the First Amendment; (2) complete repeal of the ordinance; and (3) an award of compensatory damages to the Plaintiffs.

The Parties attempted to resolve the issue of attorney's fees without the Court's involvement. Because those efforts were unsuccessful, the Plaintiffs now seek an award of attorney's fees and costs under the Civil Rights Attorney's Fee Awards Act of 1976, 42 U.S.C. § 1988. Section 1988 authorizes the Court to allow a "reasonable attorney's fee" to prevailing civil rights plaintiffs.

## II. BACKGROUND

The Defendant, City of Springfield, claims that when it sought to enact a panhandling ordinance in 2007, it intended to comply with applicable law as articulated in *Gresham v. Peterson*, 225 F.3d 899 (7th Cir. 2000), wherein the Seventh Circuit upheld an Indianapolis panhandling ordinance as constitutional.

Six years later the Plaintiffs, represented by Mark G. Weinberg and Adele Nicholas, on September 3, 2013 filed this case. The claim was that the prohibition

in § 131.06(e) of the Springfield Municipal Code on "vocal requests" for "immediate donation[s]" on the public walkways in the downtown historic district violated the First Amendment. The following day, the Plaintiffs filed a motion for a preliminary injunction, seeking an order preventing the City from enforcing the ordinance on the ground that the ban on panhandling was a content-based regulation of speech that was not narrowly tailored to serve a compelling government interest.

The City opposed the Plaintiffs' motion and filed a motion to dismiss on the basis that the complaint failed to state a claim for violation of the First Amendment.

The Court denied the motion for a preliminary injunction on October 25, 2013, finding that the ordinance was a reasonable, content-neutral regulation of the "time, place and manner" of speech. The Plaintiffs appealed the denial of the preliminary injunction to the Seventh Circuit. During the pendency of the appeal, the Supreme Court issued its decision in *McMullen v. Coakley*, 134 S. Ct. 2518 (2014), clarifying the extent to which municipalities may regulate speech occurring on public sidewalks. The Plaintiffs submitted supplemental briefing to the Seventh Circuit addressing *McMullen* on June 27, 2014.

Following oral argument, the Seventh Circuit on September 25, 2014 affirmed this Court's decision denying the Plaintiffs' motion for a preliminary injunction, finding the City's ordinance to be a content-neutral regulation which imposed a

reasonable time, place or manner restriction on speech. *See Norton v. City of Springfield*, 768 F.3d 713 (7th Cir. 2014).

The Plaintiffs petitioned for rehearing *en banc* in the Seventh Circuit on October 9, 2014. Attorneys from Latham & Watkins filed additional appearances on the Plaintiffs' behalf in the Seventh Circuit. While the *en banc* petition was pending, the U.S. Supreme Court issued its decision in *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015). In *Reed*, the Supreme Court held that "a speech regulation targeted at specific subject matter is content based even if it does not discriminate among viewpoints within that subject matter." *Id*. at 2230. Subsequently, the Supreme Court remanded *Thayer v. Worcester*, 755 F.3d 60 (1st Cir. 2014), No. 14-428 (U.S. June 29, 2015)–a case wherein the First Circuit had upheld a municipal panhandling law as a content-neutral regulation of the "time, place and manner" of speech–for reconsideration in light of *Reed*. The Seventh Circuit requested supplemental briefing from the parties on the effect of *Reed* and *Thayer* on its consideration of the constitutionality of Springfield's panhandling ordinance. The Plaintiffs filed their supplemental brief on July 13, 2015.

The Seventh Circuit panel issued a unanimous decision granting the Plaintiffs' petition for rehearing on August 7, 2015, finding that Springfield's panhandling ban was a form of impermissible "content discrimination" under *Reed* and the Plaintiffs,

therefore, were entitled to a preliminary injunction. *See Norton v. City of Springfield*, 806 F.3d 411, 413 (7th Cir. 2015). The case was remanded to this Court.

On December 1, 2015, the City filed a petition for a writ of certiorari to the U.S. Supreme Court, asserting that the Seventh Circuit misapplied *Reed*. The Plaintiffs responded on January 4, 2016, and the Defendants replied. The Supreme Court denied the petition for a writ of certiorari on March 1, 2016.

On remand, this Court entered an order granting a preliminary injunction on September 17, 2015. The City sought to defend the ordinance under a strict scrutiny standard. While the injunction was in place, the parties conducted discovery. At the conclusion of discovery, the parties agreed to mediation. Following two settlement conferences with United States Magistrate Judge Tom Schanzle-Haskins, on November 4, 2016, and January 13, 2017, the parties reached an agreement concerning repeal of the ordinance and the Plaintiffs' damages.

The City repealed the ordinance on February 23, 2017. On March 24, 2017, the parties entered into a stipulation wherein the City agreed to pay each Plaintiff compensatory damages of $2,500 and agreed that the Plaintiffs shall be deemed "prevailing parties" for purposes of determining the attorney's fees Plaintiffs are entitled to recover.

## III. LODESTAR METHOD AND HOURLY RATES

The Stipulation of Dismissal identifies the Plaintiffs as the "prevailing party in the lawsuit for the purpose of determining the amount of reasonable attorneys' fees." *See* Doc. No. 48. Under § 1988, therefore, the Plaintiffs are entitled to "reasonable" attorney's fees as the "prevailing party" in a § 1983 action.

In determining an award of attorney's fees, courts typically employ the "lodestar method," which is "the product of the hours reasonably expended on the case multiplied by a reasonable hourly rate." *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014). "Although the lodestar yields a presumptively reasonable fee, the court may nevertheless adjust the fee based on factors not included in the computation." *Id*. (internal citation omitted).

The Seventh Circuit noted that "[a] reasonable hourly rate is based on the local market rate for the attorney's services." *Id*. The best indicator of the market rate is the amount actually billed by the attorney for similar work. *See id*. If that rate cannot be determined, a court may consider "evidence of rates charged by similarly experienced attorneys in the community and evidence of rates set for the attorney in similar cases." *Id*. The prevailing party has the burden of establishing the market rate for the work; if the attorneys fail to meet that burden, the district court can independently determine the appropriate rate. *See id*.

The Plaintiffs seek a total award of $417,288.50. The Plaintiffs' attorneys have filed declarations describing their experience and noting their hourly rates. Counsel have also provided an itemized list of services performed. The City acknowledges that Plaintiffs are entitled to be awarded reasonable attorney's fees.

Attorney Mark Weinberg has billed 356.9 hours at an hourly rate of $450.00, resulting in a total of $160,605.00. Attorney Adele Nicholas billed 293.4 hours at an hourly rate of $375.00, resulting in a total of $110,025.00. Mr. Weinberg and Ms. Nicholas work at Chicago law offices.

The other attorneys for the Plaintiffs are from Latham & Watkins in Washington DC, who entered the case as specialized appellate counsel, in order to assist Mr. Weinberg and Ms. Nicholas with the significant First Amendment issues at the center of this case. As noted below, the hourly rates for each of the four Latham attorneys increased during the course of this litigation.

Attorney Matthew Brill has billed as follows: 16.1 hours at an hourly rate of $975.00, resulting in a total of $15,697.50; 21.3 hours at an hourly rate of $1,025.00, resulting in a total of $21,832.50; and 1.0 hour at an hourly rate of $1,075.00, resulting in a total of $1,075.00.

Attorney Matthew Murchison billed 55.0 hours at an hourly rate of $755.00, resulting in a total of $41,525.00; 45.6 hours at an hourly rate of $835.00, resulting

in a total of $38,076.00; and 1.9 hours at an hourly rate of $905.00, resulting in a total

of $1,719.50.

Attorney Noel Miller billed 12.0 hours at an hourly rate of $495.00, resulting

in a total of $5,940.00; 25.3 hours at an hourly rate of $595.00, resulting in a total of

$15,053.50 and .6 hours at an hourly rate of $695.00, resulting in a total of $417.00.

Attorney Bridget Reineking billed 9.5 hours at an hourly rate of $495.00,

resulting in a total of $4,702.50 and 1.0 hour at an hourly rate of $620.00, resulting

in a total of $620.00.

The total amount billed by the Plaintiffs' attorneys is $417,288.50.

## IV. DISCUSSION

"The purpose of § 1988 is to ensure effective access to the judicial process for

persons with civil rights grievances." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)

(internal quotation marks omitted). Congress sought to ensure that "competent

counsel was available to civil rights plaintiffs." *Blanchard v. Bergeron*, 489 U.S. 87,

93 (1989). The United States Supreme Court has explained that a "reasonable

attorney's fee" under § 1988 "contemplates reasonable compensation, in light of all

the circumstances, for the time and effort expended by the attorney for the prevailing

plaintiff, no more and no less." *Id*.

The Plaintiffs' motion is supported by declarations from the attorneys. Based

on those declarations, the Plaintiffs allege the hourly rates sought for each of their attorneys are reasonable and fair given their experience, the rates charged to paying clients in similar cases and rates awarded to civil rights attorneys with comparable experience. These are relevant considerations in determining an appropriate fee. *See Gautreaux v. Chicago Housing Auth.*, 491 F.3d 649, 659 (7th Cir. 2007).

The City claims there are extraordinary circumstances existing which justify an attorney's fee award significantly less than that requested by the Plaintiffs. Specifically, the Court should consider the City's good faith efforts to comply with the applicable constitutional requirements at the time the ordinance was adopted, in addition to the fact that the outcome of this case was significantly influenced by an unrelated Supreme Court decision. The City alleges these factors warrant an equitable reduction in fees.

A. Counsel's background, qualifications and experience

Mark G. Weinberg is a 1988 graduate of the University of Chicago Law School who since 2001 has been a solo practitioner with a focus on civil rights law. He has extensive experience with First Amendment issues, including multiple cases involving the legal rights of individuals to panhandle in the public way.

Adele D. Nicholas is a 2008 graduate of The John Marshall Law School. During her legal career, she has focused on representing victims of government

misconduct and constitutional violations. Ms. Nicholas has successfully resolved more than one hundred § 1983 cases in her client's favor through trial, summary judgment or settlement. At least two of those cases concern the legal rights of individuals to panhandle. She has conducted more than a dozen trials and has been counsel of record on eleven Seventh Circuit appeals. She has also taught CLE courses concerning aspects of § 1983 litigation.

Matthew Brill is a partner at Latham & Watkins LLP and is the global chair of the firm's Communications practice group and also a member of the firm's Supreme Court and Appellate practice group. He is a 1996 *magna cum laude* graduate of Harvard Law School. Mr. Brill has extensive experience with appellate proceedings, with a particular focus on First Amendment issues. He oversees a number of junior partners, counsel and associates. Mr. Brill has more than 20 years experience litigating First Amendment issues, including appeals of judicial decisions and challenges to orders adopted by the Federal Communications Commission. He supervised a team in this case that included another attorney with substantial experience litigating First Amendment matters, Matthew Murchison, who is currently a partner at Latham but was a senior associate during the appellate proceedings in this case. Mr. Murchison has extensive experience on First Amendment issues and has drafted the First Amendment sections of briefs filed in federal appellate courts and

the U.S. Supreme Court. Noel E. Miller and Bridget R. Reineking were junior litigation associates on the team and had a significant role researching First Amendment precedent and developing arguments on appeal.

### B. Hourly rates and market rates for Chicago attorney services

When the prevailing party's attorney "maintains a contingent fee or public interest practice," and thus does not possess billing records showing the hourly rate he or she charges, a court "should look to the next best evidence–the rate charged by lawyers in the community of reasonably comparable skill, experience, and reputation." *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 (7th Cir. 1996) (internal quotation marks omitted). The Plaintiffs contend the rates of Mr. Weinberg and Ms. Nicholas are consistent with those regularly awarded to civil rights attorneys of similar experience and skill. Attached to the Plaintiffs' motion is the Declaration of Attorney Lawrence V. Jackowiak, who has practiced civil rights law for over 20 years in Chicago and is familiar with the work of Mr. Weinberg and Ms. Nicholas. Mr. Jackowiak states that the rates sought by both attorneys are reasonable and commensurate with rates awarded to attorneys of similar skill, reputation and experience.

The Plaintiffs claim that courts have routinely awarded attorneys of similar experience, reputation and skill an hourly rate comparable to Mr. Weinberg's hourly

rate of $450.00.  They cite three cases from the Northern District of Illinois as examples.  Additionally, the Plaintiffs allege courts have awarded attorneys of comparable skill and experience to Ms. Nicholas an hourly rate similar to her rate of $375.00.  The Plaintiffs cite cases from the Northern District of Illinois and Eastern District of Wisconsin.

### C. Hourly rates for Latham attorneys

The Plaintiffs assert that the Latham firm's customary billing rates for appellate litigation matters are consistent with rates charged by similar firms for the same type of work.  Mr. Brill's Declaration states that in its capacity as specialized appellate counsel, Latham had a prominent role advising Mr. Weinberg and Ms. Nicholas on case strategy and drafting briefs in the appeal.  In particular, the Latham attorneys worked on the Plaintiffs' Reply Brief (filed February 26, 2014); the Plaintiffs' Petition for Rehearing *En Banc* (filed October 9, 2014); Plaintiffs' Supplemental Brief requested by the Seventh Circuit to address intervening Supreme Court rulings (filed July 13, 2015); and Plaintiffs' Brief in Opposition to Defendants' Petition for a Writ of Certiorari before the U.S. Supreme Court (filed January 4, 2016).

### D. Nature of the claims and availability of local counsel

The Plaintiffs' attorneys typically practice in the Chicago and Washington, D.C. markets.  The hourly rates in those locations tend to be higher than those for

12

attorneys practicing in Springfield, Illinois. The City asserts the rates claimed by the Plaintiffs' attorneys are excessive for attorneys typically appearing in federal courts in Central Illinois. In support of that assertion, the City has attached the affidavit of attorney Carl R. Draper, a well-known and very well-respected member of the bar of this Court, who opines that the reasonable hourly fee for an experienced civil rights litigation attorney in this federal district ranges from $300-350 per hour. A reasonable rate for a less experienced associate ranges from $200-250 per hour.

To the extent that the City contends the Court should reduce the award on that basis, the Plaintiffs note the Seventh Circuit has stated "just because the proffered rate is higher than the local rate does not mean that a district court may freely adjust that rate downward." *Mathur v. Board of Trustees of Southern Illinois University*, 317 F.3d 738, 743 (7th Cir. 2003). "[I]f an out-of-town attorney has a higher hourly rate than local practitioners, district courts should defer to the out-of-town attorney's rate when calculating the lodestar amount, though if local attorneys could do as well, and there is no other reason to have them performed by the former, then the judge, in his discretion, might allow only an hourly rate which local attorneys would have charged for the same service." *Id*. at 744 (internal quotation marks omitted); *see also Jeffboat, LLC v. Director, Office of Workers' Compensation Programs*, 553 F.3d 487, 490 (7th Cir. 2009) ("[O]ur cases have consistently recognized that an attorney's actual billing

rate for comparable work is presumptively appropriate for use as a market rate when making a lodestar calculation."). Although the plaintiff in *Mathur* was from southern Illinois, the court stated it was reasonable for him to search for an attorney in Chicago when his efforts in southern Illinois were unsuccessful. *See id*. Additionally, it concluded the district court abused its discretion in simply stating "that the lower rate was appropriate because of the prevailing local rates in southern Illinois, without regard to the quality of service rendered by the appellants." *Id*.

The Supreme Court has held that "the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988." *Hensley*, 461 U.S. at 440. If a plaintiff "has obtained excellent results, his attorney should recover a fully compensatory fee." *Id*. at 435. The City has not made any specific objections to the amount of time that Plaintiffs' counsel invested in this case.

Accordingly, the Plaintiffs contend their counsel should be awarded fees based on their customary hourly rates in the Chicago and Washington, D.C. markets where they typically practice. This is appropriate for three reasons: (1) the unavailability of counsel skilled in First Amendment litigation in the Springfield market; (2) counsel's particular experience and expertise in First Amendment litigation affecting the rights of the indigent; and (3) the complexity and importance of the constitutional issues

14

raised in this litigation.

Plaintiffs Don Norton and Karen Otterson both claim they were ticketed and arrested numerous times for violating the City's ban on panhandling in the downtown historic district of Springfield. In 2012, they began looking for a local attorney to bring a lawsuit on their behalf. Mr. Norton's Declaration provides that he spoke to several Springfield attorneys about the possibility of filing a lawsuit against the City. Specifically, he spoke to two well-respected local firms in Springfield, and a member of the city council–an alderman who is also an attorney; and attorneys at the ACLU in Washington D.C., none of whom were willing to take Mr. Norton's case. The City contends these firms do not represent the extent of attorneys with extensive civil rights experience in Springfield. The two law firms are known primarily for their personal injury practices. The attorney who was an alderman would have been disqualified from participating in this case.

In 2013, Norton's friend and fellow Springfield resident, Barb Olson, helped him conduct research about attorneys and suggested that he contact Mark Weinberg, who had represented panhandlers in Chicago. Plaintiff Norton sent Attorney Weinberg a letter requesting representation. He enclosed the Springfield ordinance and copies of tickets he had received for panhandling.

The Plaintiffs allege that, because of the unavailability of local counsel who

were willing to take on this case, it was reasonable and necessary for them to hire attorneys from outside of the Springfield area. The City asserts that, given the number of qualified attorneys in downstate Illinois, there is no substantial reason a litigant would be required to seek Chicago counsel.

The Court cannot say for certain whether a local attorney could have achieved the same result–that being total victory–as the Plaintiffs' very able attorneys ultimately did. It would be speculative for the Court to conclude that such an attorney would take the case and have the same degree of success. However, it is worth noting that in more than 50 years as both a state and federal judge, the Court has been privileged to preside in numerous cases in which a party or parties were represented by excellent attorneys from Springfield and Central Illinois.

In support of their assertion that local attorneys were not available or were unwilling to take on this case, the Plaintiffs note they conducted an unscientific search which showed that few attorneys in the Central District of Illinois seem to take on First Amendment cases. Specifically, the Plaintiffs state that of the first 100 results returned in response to a Google Scholar search for "First Amendment" in this district between 2013 and 2017, only seven individuals were represented by counsel. The remaining 93 plaintiffs proceeded on a pro se basis. Additionally, the Plaintiffs allege the unavailability of local counsel willing to take on this case is also supported

by the fact that the ordinance at issue was passed in 2007 and was in place for six years without any local attorney bringing a constitutional challenge to it.

Based on the foregoing, there is reason to question whether the Plaintiffs could have obtained local counsel to successfully prosecute this case. However, the Plaintiffs did not contact any local attorneys who have significant experience with civil rights actions.

Given the number of quality attorneys in the Springfield area, the Court believes that if the Plaintiffs had inquired of a few attorneys who have an extensive civil rights practice, there is a significant likelihood they would have found a local attorney to take the case and achieve the same degree of success as the Plaintiffs' counsel ultimately achieved. Of course, the Court recognizes that when Mr. Norton was looking for an attorney, it is extremely unlikely that one of his considerations was the amount of attorney's fees to be awarded in the event that he were to eventually prevail in the case. He simply wanted to find an attorney who would successfully vindicate his First Amendment rights. However, the availability of local attorneys is a relevant factor that the Court may consider in determining an appropriate attorney's fees amount. *See Mathur*, 317 F.3d at 744.

The City asks the Court to adopt hourly rates for counsel as testified by Mr. Draper. Those would be $350 per hour for Weinberg and Brill, $300 per hour for

Nicholas, $250 per hour for Murchison, and $200 per hour for new attorneys Miller and Reineking. This would result in an adjusted claim of $261,680.00. The City asks the Court to reduce this amount by an additional 50% to $130,840, based on the City's good faith and the fact that the ordinance was constitutional under then-existing law when it was adopted. In reply, the Plaintiffs contend that the City has not provided sufficient justification for a 70% reduction in attorney's fees.

The Plaintiffs further state that a recent Central District of Illinois fee decision suggests that the market rates for complex civil rights litigation are more in line with those sought by the Plaintiffs than those cited by Mr. Draper. *See Moore v. Madigan*, 2014 WL 6660387, at *15 (C.D. Ill. Nov. 24, 2014) (Myerscough, J.) (awarding $500 per hour to Plaintiffs' lead counsel and $420 per hour to another attorney in a Second Amendment case in which Plaintiff obtained injunctive relief).

The Court has no doubt that the City acted in good faith in defending an ordinance it believed was constitutional based on applicable Seventh Circuit precedent. However, the Court does not believe that the City's lack of bad faith is an appropriate reason to significantly reduce the amount of attorney's fees. The Seventh Circuit has held that "the good faith of the defendant is irrelevant" to an attorney's fees determination under § 1988. *See Lampher v. Zagel*, 755 F.2d 99, 104 (7th Cir. 1985). The Court notes the constitutionality of anti-panhandling ordinances was an

evolving area of the law at the time. The Plaintiffs' attorneys also acted in good faith in challenging the ordinance. Even assuming that the City's good faith was an appropriate consideration, the Plaintiffs' good faith in prosecuting the action would also be at least as significant of a factor.

The City does not contend that the case was over-litigated or over-staffed. An attorney who opposes fees must raise objections with particularity and clarity. *See Hutchison v. Amateur Electronic Supply, Inc.*, 42 F.3d 1037, 1048 (7th Cir. 1994). Because the City has not raised any specific or particular objections to the fees sought by the Plaintiffs' counsel, the Court finds no basis to make the significant reductions sought by the City to the Plaintiffs' claimed attorney's fees.

The Court earlier noted that the Plaintiffs' attorneys had provided evidence relating to the reasonableness of their rates. This included (1) evidence of hourly rates charged to paying clients in civil rights cases; (2) affidavits noting their relevant experience and skill with matters concerning the First Amendment rights of indigent people; (3) citations to cases in which rates similar to those sought here were awarded to attorneys of similar skill, experience and reputation in civil rights cases; and (4) the affidavit of an experienced civil rights attorney familiar with the work performed by counsel and the rates charged by other civil rights attorneys for similar work.

The Plaintiffs further assert that the constitutional issues implicated in this case

were complex and critically important. In particular, this included the standard for determining whether a particular law is properly treated as content-based under the First Amendment. The proceedings here took nearly four years. There was extensive briefing of these issues before both the Seventh Circuit and the U.S. Supreme Court. The Plaintiffs further note that the applicable legal standards were evolving and open ended, given that the Supreme Court had never considered a case involving the legal rights of panhandlers.

Additionally, the Plaintiffs assert the legal issues implicated in this case were (and are) of national importance. Municipalities across the country seek to impose regulations on panhandling activity. Accordingly, they have a significant interest in knowing the limits of their authority to impose restrictions. The Plaintiffs cite a number of federal district court and state court decisions that relied on the Seventh Circuit's rehearing decision in this case to strike down regulations of panhandling on First Amendment grounds. They also note that the case has been discussed in a number of law review articles.

The Plaintiffs further contend that, because of the complexity and importance of the issues raised in this case, it was appropriate and necessary for them to obtain counsel experienced in First Amendment litigation. As previously discussed, Mr. Weinberg and Ms. Nicholas have extensive experience representing indigent plaintiffs in cases implicating the First Amendment. Moreover, the Latham attorneys

are respected appellate litigators who have successfully litigated a number of significant First Amendment cases in the federal appellate courts.

Certainly, the Plaintiffs benefitted by hiring attorneys who are First Amendment and appellate specialists. The law concerning what constituted an unlawful content-based regulation was somewhat muddled and there was a risk that Plaintiffs would not prevail. The fact that the state of the law was unsettled likely contributed to the duration of the case. Ultimately, the Supreme Court's decision in *Reed* settled the issue. However, that was only after many hours were expended by multiple attorneys in this case.

For a number of reasons, the Court is unable to find that the attorney's fees award should be reduced to the extent requested by the City. The City does not dispute the reasonableness of the time the Plaintiffs' counsel spent on the case. The Plaintiffs have met their burden of substantiating the reasonableness of Plaintiffs' counsel's hourly rates. Finally, this was a complex case implicating important constitutional rights. Certainly, the Court does not want to discourage able counsel such as the Plaintiffs' attorneys here from representing plaintiffs when significant rights are at stake. The Court benefits just as a party does when the case is litigated by skilled attorneys. Accordingly, it is important that Plaintiffs' counsel are compensated fairly for extensive work performed over nearly four years.

It is also noteworthy that counsel did not seek fees for the preparation of

Plaintiffs' reply brief in support of their petition for attorney's fees. Counsel also excluded from their fee petition a request for compensation for paralegals' time. Additionally, the Plaintiffs seek reimbursement of only the $400 in costs to account for the filing fee. The Plaintiffs do not seek the more than $7,000 in costs related to responding the City's petition for a writ of certiorari. Certainly, this is evidence of good faith on the part of the Plaintiffs and counsel.

The only basis why a lower rate should be awarded in this case is to account for the probability that a Springfield or Central Illinois attorney would have taken the case and prevailed. The Court believes that a 20% reduction is appropriate based on the likelihood–uncertain though it is--that a local civil rights attorney would have taken the case and achieved a favorable result for the Plaintiffs.

For all of these reasons, the Court concludes that Plaintiffs are entitled to attorney's fees in the amount of $333,830.80. Each attorney's claimed amount shall be adjusted proportionately.

E. Cost and expenses

Given their status as a prevailing party in a civil rights case, the Plaintiffs are entitled to recover litigation expenses incurred in prosecuting the case pursuant to 28 U.S.C. § 1920 and 42 U.S.C. § 1988. *See Downes v. Volkswagen of America, Inc.*, 41 F.3d 1132, 1144 (7th Cir. 1994). ("[E]xpenses of litigation that are distinct from either statutory costs or the costs of the lawyer's time reflected in hourly billing rates

. . . are part of the reasonable attorney's fee allowed by the Civil Rights Attorney Fees Awards Act.").

Although the Plaintiffs incurred nearly $7,400 in costs related to responding to the City's petition for a writ of certiorari, the Plaintiffs are not seeking the reimbursement of those expenses. They seek reimbursement of only $400 in costs, for the filing fee in this case.

Ergo, the Plaintiffs' Petition for Attorney's Fees [d/e 49] is ALLOWED.

The Plaintiffs are hereby awarded attorney's fees in the amount of $333,830.80 and costs in the amount of $400.00.

The amount of attorney's fees for each attorney shall be reduced by 20% from the amount the attorney has claimed, as provided in this Order.

The Clerk will enter Judgment and terminate this case.

ENTER: December 14, 2017

    FOR THE COURT:

                                /s/ *Richard Mills*
                                Richard Mills
                                United States District Judge